UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

   -v-

                                        CASE NO: 8:20-CR-118 (DNH)

DEAN BROOKS

                   Defendants.

---

## SENTENCING MEMORANDUM OF DEAN BROOKS

DATED: November 24, 2020              Respectfully submitted,

                                          LISA A. PEEBLES
                                          Federal Public Defender

                                          __/s/_____
By:   Maria Jacob, Esq.
       Assistant Federal Public Defender
       Bar Roll No. 700927
       Clinton Exchange, 3rd Floor
       4 Clinton Square
       Syracuse, New York   13202
       (315) 701-0080

**PRELIMINARY STATEMENT**

On May 13, 2020, Mr. Brooks waived his right to an indictment and pled guilty to one count of Receipt of Child Pornography and one count of Possession of Child Pornography. Sentencing is currently set for December 9, 2020.  Mr. Brooks does not object to the findings in the pre-sentence report, however, respectfully requests that the Court sentence him to a below guideline sentence.

Mr. Brooks made a terrible mistake and he is undoubtedly remorseful for his conduct. However, this conduct is not reflective of Mr. Brooks's overall character as he does not have any prior criminal history.  He committed this offense when he was severely depressed and felt alone.  He did not touch physically touch a minor and did not distribute the images he received. Therefore, he did not perpetuate the re-victimization of the minor.  Lastly, Mr. Brooks is a man of limited comprehension and was not able to fully appreciate the consequences of his conduct. Because of this mistake, he will be labeled as a sex offender and will lose valuable years of his children's lives while being incarcerated.

**ARGUMENT**

I.    **Legal Standard**

The Court is well aware that the Supreme Court's opinions in *Kimbrough v. United States*, 552 U.S. 84 (2007), and *Gall v. United States*, 552 U.S. 38 (2007), have dramatically altered the law of federal sentencing.  While courts must continue to consider the sentencing guidelines, Congress has required federal courts to impose the least amount of imprisonment necessary to accomplish the purposes of sentencing as set forth in 18 U.S.C. §3553(a).[1]  As the

---

[1] Those factors include (a) the nature and circumstances of the offense and history and characteristics of the defendant; (b) the kinds of sentences available; (c) the advisory guideline range; (d) the need to avoid unwanted sentencing disparities; (e) the need for restitution; and (f) the need for the sentence to reflect the following: the seriousness of the offense, promotion of respect for the

Supreme Court made clear in *Kimbrough* and *Gall*, the Sentencing Guidelines are simply an advisory tool to be considered alongside other statutory considerations set forth in 18 U.S.C. §3553(a).

In two more summary reversals, the Court further clarified that the Guidelines cannot be used as a substitute for a sentencing court's independent determination of a just sentence based upon consideration of the statutory sentencing factors. *Nelson v. United States*, 129 S. Ct. 890 (2009), 2009 WL 160585 (Jan. 26, 2009); *Spears v. United States*, 129 S. Ct. 840 (2009), 2009 WL 129044 (Jan. 21, 2009). "Our cases do not allow a sentencing court to presume that a sentence within the applicable Guidelines range is reasonable," the Court held in *Nelson*. 2009 WL 160585, at *1. "The Guidelines are not only *not mandatory* on sentencing courts; they are also not be presumed reasonable." Id. At *2. In other words, a sentencing court may not rely on the Sentencing Guidelines range as a default to be imposed unless a basis exists to impose a sentence inside that range. Rather, the court must weigh each of the factors and impose a sentence that constitutes the least amount of imprisonment necessary pursuant to Section 3553(a).

**II.    Imposing a Below Guideline Sentence is Sufficient, But Not Greater Than Necessary, to Comply with 18.U.S.C. §3553(a).**

### a. Mr. Brooks's Personal History and Characteristics

Mr. Brooks is 42 years old and was born and raised in New York. He has been living in Hammond, New York for the past several years with his wife and two children. Mr. Brooks was raised by both his mother and father, who divorced when he was about eight years old. He bounced back and forth between their residences until he was about 22 years old. Mr. Brooks's

---

law and just punishment for the offense, provision of adequate deterrence, protection of the public from future crimes and providing the defendant with needed educational and vocational training, medical care, or other correctional treatment. *See* 18 U.S.C. §3553(a).

2

father was a Vietnam War veteran and would occasionally suffer from night terrors. Although he had a good relationship with his father, Mr. Brooks did observe the damaging effects of his father's post-traumatic stress disorder symptoms at a young age. His father was placed on medication in order to help alleviate these symptoms. Unfortunately, the medication did not fully prevent the lashing out that would take place in the presence of Mr. Brooks. For example, Mr. Brooks observed his father break objects in the home and would sometimes scream at him and his siblings. Mr. Brooks has two older siblings, however he is not in regular contact with them.

Mr. Brooks did not finish high school as he moved schools quite a bit and he was learning disabled. He was placed in Individual Education Programs while attending elementary school because his verbal functioning and sequential memory were below average. PSR ¶ 80. In fact, according to Dr. Thomas Lazzaro, Mr. Brooks currently reads at the 6th grade level and has many cognitive deficits. *See* PSR, Psychological Evaluation Report of Dr. Thomas A. Lazzaro. After Mr. Brooks left his schooling, he worked as a cook and dishwasher at two different restaurants. It was during this time that he met his wife, who he has been married to since 2007. They started a family together and now have two children. Mr. Brooks began to notice signs of depression in 2009 and sought counseling. He was eventually diagnosed with Bi-Polar 2 Disorder and has always had a lot of trouble with finding medications that alleviate his symptoms. In fact, it appears as though many of the medications he has tried have either been completely unhelpful or have made him feel even worse.

Mr. Brooks worked as a janitor for the Ogdensburg City School District and worked in the food service department in 2007. He was determined to be disabled after this due to his limited comprehension and medical issues. Mr. Brooks did do farm work on and off, but mostly has been a stay at home father to his two children for the past 10 years. Mr. Brooks's wife is

employed at a nursing home and often times has unpredictable hours, including having to do the night shift.  Before his arrest, Mr. Brooks woke up with his children, made them breakfast and lunch, made sure they got to school, helped them with their homework after school, made the family dinner, and did all the household chores.  It is clear from his wife's letter to the court that the family relied on him for many things when she mentions that, "he is the glue that held the family together."  *See* character letter submitted under seal.

### b. Nature and Circumstances of the Offense

Mr. Brooks sincerely regrets his conduct and understands the impact that it has had on the victim and his family.  His remorse is reflected by his early acceptance of responsibility and his statement to probation.  PSR ¶27.  At the same time of the instant offense, Mr. Brooks felt lonely and was extremely depressed.  He barely saw his wife because of her work schedule, and he was desperate for attention.  After reviewing the messages, however, it is apparent that he never intended this relationship to be an in-person relationship and all the messages tend to suggest that it was a fake/fantasy relationship.  Although they discussed potentially meeting up in Alabama, it is clear from Mr. Brooks's circumstances that Mr. Brooks did not even have the ability to travel to Alabama and that this discussion was just part of the fantasy.  The messages also indicate a short-lived relationship, rather than a lengthy one spanning several months.

Furthermore, Dr. Lazzaro addresses in his report, why Mr. Brooks may not have had the same assessment of this situation that a higher functioning adult would have had.  Dr. Lazzaro explains that because of his deficits in judgment and his limited ability to verbalize socially conventional norms and values, he did not fully comprehend the consequences of his conduct.  *See* PSR, Psychological Evaluation Report of Dr. Thomas A. Lazzaro.  Mr. Brooks's confusion as to the legality of his actions and severity of his conduct is exemplified in the following exchange:

4

> From Brooks to V1: "What should I do if I get caught with we both are in trouble me way more than u.  I want to come rescue u but how? I legally can't do nothing till ur of age."

PSR ¶17.  Mr. Brooks seems to simultaneously believe he is already in trouble by speaking to the minor but also confuses the fact that he is not in trouble unless he physically goes to Alabama.  The lack of comprehension, lack of emotional maturity, and poor language skills is also apparent in this exchange.

Lastly, Mr. Brooks did not distribute the photographs that were sent to him to other parties.  This is crucial because Mr. Brooks did not contribute to the re-victimization of children that occurs every time the images are viewed.  This re-victimization is what influenced harsher penalties for child sex offenses over the years.  Adam Walsh Child Protection and Safety Act of 2006, Pub. L. No. 109-248, Section 501 (2)(D), 120 Stat. 587, 624.  The government argues in their sentencing memorandum that Mr. Brooks chose to keep the images of the minor for almost a year and that demonstrates a continued interest in them.  The fact that Mr. Brooks had these images for almost a year and did not distribute them separates him from the many defendants who choose to distribute the images, with no regard for the victim, so that they can receive consideration in the form of more images.

### c.  The Need to Promote Respect for the Law, Provide Just Punishment, Protect the Community and Provide Adequate Deterrence, and the Need to Avoid Unwanted Sentencing Disparities

A below-guideline sentence will provide adequate deterrence and protect the community. Mr. Brooks has already received the harshest punishment in his eyes, and that is being separated from his family.  He has been incarcerated for this charge for two years and has not been able to be there for his family in the way that he has been for the past several years.  Knowing that he put that stress on his family for all this time has already deterred Mr. Brooks from future criminal

conduct.  Also, the continued support of his wife demonstrated in her letter to the court further reduces the risk that he will recidivate in the future because he will have the support of his family throughout his incarceration and upon his release.  Lastly, Dr. Lazzaro determined that Mr. Brooks is not a danger to the community after evaluating him and opining that Mr. Brooks now understands the severity of his behavior.  *See* PSR, Psychological Evaluation Report of Dr. Thomas A. Lazzaro.

The government is requesting a sentence at the low end of the guidelines arguing that this is appropriate due to the sexual exploitation that occurred in this case.  However, when reviewing past sentences imposed in this district for more egregious conduct involving sexual exploitation and other crimes against minors, a *below* guideline sentence here would avoid unwanted sentencing disparities.

Firstly, in *United States v. Ralph Daniel Smith*, the defendant received a sentence of 20 years for not only enticing a minor to take sexually explicit photographs of herself but also for tricking the minor that was in his care to think he was a teenage boy.  The defendant extorted her over a period of time in order to further induce her to take more images of herself. 5:15-CR-342 (BKS).  Although the defendant in that case had a history of abuse in his family, his conduct was so egregious in that this minor was mentally tormented and deceived to believe that this "teenage boy" would distribute these horrible photographs if she did not do what he asked.  To the contrary, Mr. Brooks did not deceive or extort the victim and the conversation between them did not span a long period of time.  Lastly, the minor was not in his care.  The government is requesting a sentence of only five years less than the *Smith* case, which does not reflect the difference in the severity of conduct and the circumstances surrounding each case.

The government is also requesting the same sentence that the defendant in *United States v. Kearsing*, 1:13-CR-477 (MAD) received.  In that case, the defendant had a criminal history,

which included the rape of a pre-pubescent child that was only four years old. He also admitted to agents that he raped another child but that conduct was never charged. After committing those offenses, this defendant continued to victimize children by downloading and receiving child pornography through a peer-to-peer network that he knew would likely be distributed to others because of how the use of the software works. Although the defendant in *Kearsing* pled guilty to conduct involving receipt of child pornography while the defendant in this case engaged in sexual exploitation, the overall conduct of both defendants in their lifetimes can be distinguished. Mr. Brooks does not have a criminal history and never touched a minor. He is a family man with very limited comprehension who made a terrible error in judgment during a vulnerable period of his life. Also, Mr. Brooks never engaged in the distribution of child pornography. These two defendants should not be sentenced in a similar manner.

Lastly, Mr. Brooks should also receive a sentence lower than the defendant received in *United States v. Robert Nelson*, 5:14-CR-450 (DNH). In that case, the defendant received a sentence of 90 months of incarceration after the defendant engaged in a 10-year history of trading child pornography with other users and chatting with those users about sexually exploiting children. Although the defendant in *Nelson* did not touch any minors or chat with an actual minor, the length of time in which he was contributing to the re-victimization of children was an entire decade. Furthermore, the chats he engaged in were explicit, violent, and abhorrent. These chats included the defendant's desires to drug children, to abduct children, and to engage in forcible rape with children. *Id.* Lastly, the defendant in *Nelson* was released on bail and pending sentencing, he took pictures of himself masturbating to pictures of a 13 year old girl, and produced images that involved him pasting a picture of this same child's face onto a naked body while he positioned himself in a way that appeared as though he was having sexual contact with her. *Id.*

7

The instant offense is more akin to *United States v. Frederick Sullivan*, 3:15-CR-193 (TJM).  Mr. Sullivan was sentenced to 60 months after also pleading guilty to Receipt of Child Pornography that encompassed conduct involving sexual exploitation.  Although Mr. Sullivan was very young and lived a very sheltered lifestyle, he also engaged in chat conversations with minors that involved obtaining sexually explicit images from them.  Like this case, the defendant in *Sullivan* was also evaluated by Dr. Thomas Lazzaro and found to be socially and emotionally immature.  Dr. Lazzaro also found the defendant in *Sullivan* to have a personality disorder.  *Id.* Despite the differences in the two cases, the *Sullivan* case is the most comparable case that undersigned counsel was able to find as it deals with two defendants who both entered guilty pleas to Receipt of Child Pornography although their conduct involved the sexual exploitation of children.  Furthermore, both defendants were found to be emotionally immature by a certified psychiatrist.

### III.    The Sentencing Guideline Enhancements set forth in U.S.S.G. §2G2.1-2 Result in a Guideline Range that is Incompatible with the §3553(a) Factors.

The defense submits that in the present case the Sentencing Guidelines should be rejected on policy grounds.  A sentencing judge "may vary from Guideline ranges based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough v. United States*, 552 U.S. 85 at 101 (2007).  Such a policy disagreement is appropriate in this case because several of the enhancements that apply have been widely criticized on policy grounds.  Section 2G2.1 of the Sentencing Guidelines (which is cross-referenced in this case) has been described as "unhelpful" by the dissenting court in *United States v. Muzio*, 966 F.3d 61, 71 (2nd Cir. 2020). The dissent in *Muzio* explains that this guideline shares many of the same flaws identified in the *Dorvee* Court when analyzing the child pornography guidelines.  *Id.  See also* Dorvee, 616 F.3d at 184-188.  Most notably, the dissent reasons that the guidelines do not "call for consideration of

the defendant and do not meaningfully account for the differences in conduct committed by persons who violated the same statute." *Id*. This results in substantively unreasonable guideline ranges without any particular assessment to the unique characteristics of each defendant.

The purpose of the sentencing guidelines is to avoid unwanted sentencing disparities, yet disparity in sentencing is exactly what results when applying the 2G1.1 guideline. The guidelines do not consider several factors that the dissenting court in *Muzio* points out should be important before imposing a sentence, such as: (1) Did the defendant engage in violence, such as brutal rape? (2) what is the nature of the sexual act? Was it oral sex or actual penetration? (3) were these images distributed? (4) How many victims were there, and (5) was there deceit or trickery involved? *United States v. Muzio*, 966 F.3d 61, 78 (2nd Cir. 2020). When analyzing these factors, the court will undoubtedly reach different conclusions for different defendants even though the guidelines will call for similar unreasonable guideline ranges.

For example, Mr. Brooks was assessed a two-level enhancement under Section 2G2.1(b)(2)(A) of the Sentencing Guidelines because the offense involved the commission of a sexual act or sexual contact. PSR ¶31. This enhancement is equally applied to a defendant who actually touches a minor as well as a defendant who not only touches a minor, but has that victim perform oral sex on him/her. This disparity is an example of exactly why the guidelines produce unfair results. Mr. Brooks should not be treated equally to a defendant who physically touched a minor.

Furthermore, Mr. Brooks was assessed another two-level enhancement under Section 2G2.1(b)(6)(B) of the Sentencing Guidelines because the offense involved the use of a computer. PSR ¶32. The second circuit has repeatedly explained the flawed nature of enhancements like this one, that would be virtually applied in every case and would allow for "double-counting" because it effectively increases a defendant's sentence to reflect the kind of conduct that has

already been accounted for by the offense level.  *See United States v. Dorvee*, 616 F.3d 84 (2nd Cir. 2010). *United States v. Tutty*, 612 F.3d 128 (2nd Cir. 2010), *United States v. Volpe*, 224 F.3d 72 (2nd Cir. 2000).

## <u>CONCLUSION</u>

For the reasons stated above, Mr. Brooks respectfully requests that the Court sentence him to a below guideline sentence of 60 months of incarceration and to not impose a fine.

DATED: November 24, 2020
LISA A. PEEBLES
FEDERAL PUBLIC DEFENDER
By:   */s/ Maria Jacob, Esq.*
Assistant Federal Public Defender
Bar Roll No. 700927
Clinton Exchange, 3rd Floor
4 Clinton Street
Syracuse, New York   13202
(315) 701-0080

To:   Geoff Brown, Esq. AUSA
United States Probation

10